Burkett, J.
We think that the conclusions of fact are correctly found from the agreed statement, and that the court properly refused to find the additional facts requested by the plaintiff in error.
Several questions have been argued, both orally and on brief, but the only question worthy of report is as to whether the sandbar in the river where the sand was taken is part of the canal system of the state.
The statute under which it is claimed this sandbar became part of the canal system, is section 8, of the act of February 4,1825, Chase’s Statutes, page 1475, 23 O. L., 56, which reads as follows:
“Section 8. That it shall and may be lawful for the said canal ■ commissioners, and each of them by themselves, and by any and every superintendent, agent and engineer, employed by them to enter upon, and take possession of, and use all and singular any lands, waters, streams, and materials, necessary for the prosecution of the improvements intended by this act; and to make all such canals, feeders, dykes, locks, dams and other works and devices as they may think proper for making said improvements, doing nevertheless, no unnecessary damage, and that in case any lands, waters, streams, or materials, taken and appropriated for any of the purposes aforesaid, shall not be given or granted to this state, it shall be the duty of the canal commissioners, on application being made to them by the owner or owners of any such lands, waters, streams or materials, to appoint by writing not less than three nor more than five discreet disinterested persons as appraisers, who shall before they enter upon the duties of their appointment, severally take an oath or affirmation, before some person authorized to administer oaths, faithfully and impartially to. perform the trust and duties required of them by this act, a certificate of *583 which oath or affirmation, shall be filed with the secretary of the canal commissioners, and it shall be the duty of said appraisers, or a majority of them, to make a just and equitable estimate and appraisal of the loss or damage, if any, over and above the benefit and advantage to the respective owners and propriteors, or parties interested in the premises, so required for the purposes aforesaid, and the said appraisers, or a majority of them, shall make regular entries of their determination and appraisal, with an apt and sufficient description of the several premises, appropriated for the purposes aforesaid, in a book, or books, to be provided and kept by the canal commissioners, and certify and sign their names to such entries and appraisal, and in like manner certify their determination as to those several premises which will suffer no damage, or will be benefited more than injured by or in consequence of the works aforesaid, and the canal commissioners shall pay the damages so to be assessed and appraised, and the fee simple of the premises so appropriated shall be vested in this state; Provided, hotoever, that all such applications to the board of canal commissioners, for compensation for any lands, waters, streams, or materials so appropriated, shall be made within one year after such lands, waters, streams, or materials, shall have been taken posession of, by the said commissioners, for the purposes aforesaid.”
In the case of Malone v. Toledo, 34 Ohio St., 541; State v. Railway Co., 53 Ohio St., 189; State v. Snook, 53 Ohio St., 521; and State v. Griftner, 61 Ohio St., 201, the canal commissioners entered upon, took possession of, and used the premises in question in those cases in the construction and operation of the canals, and thereby a fee to the land vested in the state.
In the cases of Corwin v. Corwin, 12 Ohio St., 629, and Voight v. Railway Co., 58 Ohio St., 123, the land had been acquired by private canal companies which obtained only an easement for canal purposes from *584 the land owners, and thereafter the state acquired such private canals from such companies and made them parts of the canal system of the state, and thereafter abandoned them, and this court held in those cases that the state acquired only the easement held by the canal companies, and not a fee-simple, for the reason that while the state had the power, under section 8 of the canal act, to enter upon, possess and use the lands for canal purposes, and thereby acquire a fee as against all who had any interest in the lands, yet as the former owners were out of posession and out of control and the private canal companies were in possession and control, the change from the canal companies to the state canal system-was not of a character to call the attention of the former land owners to the fact that their reversion was being taken by the state; and would not give them a reasonable opportunity to make application for compensation for such reversion. This clearly appears in the Corwin case, and that case controlled the decision of the Voight case.
In the case of Smith v. The State, 59 Ohio St., 278, this court held that for the state to acquire a fee to lands by occupancy and use for canal purposes, it was necessary that the occupancy by the state should be exclusive, and that it should be so open and notorious as to put the owner of the land on notice that the property had been taken by the state for its own with the purpose or appropriating it as part of its canal system.
The above cases clearly point out the rule by which the state could acquire the fee to lands for canal purposes. If the entry, use and possession by the state were open and notorious so as to inform the land owner that his land had been taken by the state for canal purposes, a fee vested in the state. But if the entry, possession or use was merely incidental, constructive or indirect, and not of such character as to apprise the canal commissioners that they were mak *585 ing the state liable, nor tbe land owner that his lands were so appropriated as to give him a claim against tbe state for taking and using tbe same for canal purposes, no title or fee vested in tbe state.
To vest a fee in tbe state, tbe entry, possession or use must have been of such an open and notorious character as to make it fairly apparent to both tbe officers of tbe state and tbe owners that tbe lands were taken and used for canal purposes.
This section of tbe statute should be fairly construed, not rigidly in favor of either party. It should be regarded by tbe courts at this late day as it was looked upon in tbe days when tbe canals were constructed, and to wrest the lands from tbe owners and vest a fee thereto in tbe state, facts should appear from which a court can clearly see that both parties knew or should have known at the time of tbe construction of tbe canals, that the lands in question in any particular case bad been appropriated and used for canal purposes.
Tbe mere backing up of water in a river, creek, run or ravine to an extent insufficient to seriously interfere with tbe use of tbe lands by tbe owner, could not have been regarded in those days, either by tbe officers of tbe state or tbe land owners, as an appropriation and use of sucb river, creek, run or ravine for canal purposes. What must have been then understood as an appropriation and use of lands and streams was an actual physical possession and use in the construction of tbe canals and feeders, dykes, locks and dams connected therewith so as to become a part of tbe canal system of the state. Sucb an appropriation was open and public notice to tbe land owner that be bad been deprived of bis property, and an invitation to him to make application for compensation.
' Tbe backing up of water in tbe Auglaize river, as shown by the finding of facts in this case, was not of a character to induce tbe canal commissioners to think *586 that they had appropriated the stream for canal purposes so as to vest a fee to be paid for by the state; neither was it of a character to apprise the land owner that his lands had been so appropriated.
The use of the river at that point by deepening, it with backwater was not for the purpose of makin a reservoir, as in State v. Griftner, supra, but was a mere incident arising from the construction of the dam in the Maumee river some four and one-half nliles below. The Auglaize river was not in any manner used for slack-water navigation, for the storage or turning of boats, and it was not dredged or deepened for -canal purposes, and was not used as a part of the canal system unless this slight incidental backing of water constituted such use. We are clear that this was not sufficient, and that the court below correctly decided the case.

Judgment affirmed.